# UNITED STATES DISTICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| RONALD FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CV-00256-HAB |
| | ) | |
| BENJAMIN CAUDELL AND, | ) | |
| CHIEF OF POLICE, MARION POLICE | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

While investigating a triple homicide, officers with the Marion Police Department observed that a home occupied by Plaintiff, Ronald Fields ("Fields"), had a home surveillance system with cameras pointing in the direction of the crime scene. After twice attempting to gain entry by traditional means, i.e., knocking on the door, they sought and obtained a warrant to retrieve the hard drive and video footage from the surveillance cameras from Fields' residence. Officers serving the warrant again received no answer when they knocked; so, they breached the front door only to discover that the surveillance wires led to a dead end – they merely hung unconnected to any source in the basement.

To his surprise and dismay, Fields arrived home the next morning to find his front door infiltrated and a copy of a warrant and detective's business card sitting on his coffee table. He filed suit against Benjamin Caudell ("Det. Caudell"), the detective who supplied the business card, and the Marion Police Chief ("the Chief") pursuant to 42 U.S.C. § 1983 asserting that Det. Caudell violated his Fourth, Fifth, and Fourteenth Amendment rights by conducting an illegal search. He sued the Chief under a theory of *respondeat superior* liability.

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 30). Although advised of his obligation to respond, Fields filed no timely response. Thus, the motion is now ripe for determination.

## **FACTUAL BACKGROUND**

On December 30, 2018, Det. Caudell was dispatched to the residential property at 2307 South Gallatin Street to assist in investigating the triple homicides of a father and his two young sons, all of whom suffered gunshot wounds to the head. During a canvass of the neighborhood for evidence and information about the crime, Det. Caudell observed surveillance cameras mounted on the exterior of a house located at 2319 South Gallatin. This house was two houses south of the crime scene. One of the surveillance cameras appeared to be aimed directly north towards the victims' residence. Det. Caudell believed that the camera was positioned in such a way that it might have captured video relevant to the crime, including "victim, witness, suspect and timeline information." (Tr. of Probable Cause Hr'g at 4, ECF No. 32-1).

Officers unsuccessfully attempted to contact the occupants of 2319 South Gallatin at 4:00 p.m. and again at 6:44 p.m. Without knowledge of the recording and rewriting parameters of the home's surveillance system, investigating officers were concerned that valuable evidence could be lost if it was not promptly recovered (Prob. Cause Tr. at 4). For this reason, Det. Caudell sought a search warrant to find the home's hard drive/surveillance video system.

Det. Caudell consulted with Grant County Prosecutor, James Luttrell, who authorized Caudell to proceed with the search warrant request. Det. Caudell prepared a search warrant and arranged for an oral probable cause hearing with Grant Superior Court Judge Dana Kenworthy, outside normal Court operating hours. After hearing Det. Caudell's sworn testimony, Judge Kenworthy determined probable cause existed for the search and issued the warrant.

Det. Caudell returned to the scene with the warrant and was advised by other officers that Fields lived at 2319 South Gallatin. Det. Caudell attempted to call a telephone number believed to be Fields' telephone number, to no avail. At approximately 7:45 p.m., Det. Caudell, accompanied by other uniformed officers knocked multiple times and announced their presence at the front door. Receiving no response, one of the officers kicked in the front door to allow them entry.

Once inside, the officers located surveillance camera wires leading to the basement. The officers followed the wiring in search of the hard drive/surveillance video system but discovered that the wires were simply hanging from the ceiling unconnected to any source. Upon this discovery, the officers determined that there was no hard drive/surveillance video system in the home and left the house. Det. Caudell left a copy of the search warrant together with his business card on the living room coffee table to advise the home's occupants that it was the police that had entered the residence.

The next morning, Fields returned to his house after having been gone overnight. He located the search warrant and Det. Caudell's business card and observed that his front door had been kicked in and his chain link fence was damaged. Field is uncertain whether the police damaged the chain link fence.

At some point, Fields talked by phone to someone employed by the City of Marion who advised him to get estimates to repair the damage to his front door and fence. Fields determined that it would cost $300 to purchase a new front door and $600 to repair his fence. At no time, however, did he submit estimates to the City, nor did he file a tort claim notice advising the City of his property damage claim. Instead, Fields filed the present suit challenging the validity of the search warrant and unspecified Indiana state law claims. (Complaint, ECF No. 1).

Defendants have now moved for summary judgment arguing that Fields' claims fail as a matter of law.

## APPLICABLE STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v.Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## DISCUSSION

### A.  Section 1983 Claims against Det. Caudell

### 1.  Fourth Amendment

Fields' first claim is an unlawful search and seizure claim against Det. Caudell for the entry and search of his residence on December 30, 2018. The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and its central requirement is one of reasonableness. *Illinois v. McArthur,* 531 U.S. 326, 330 (2001) (quoting U.S. Const., Amend. 4). Generally, to search a private place, person, or effect, law enforcement must obtain a warrant supported by probable cause from a judicial officer.  *Katz v. United States*, 389 U.S. 347, 357 (1967)).

It is undisputed here that Det. Caudell obtained a search warrant, supported by probable cause, to retrieve video surveillance equipment from 2319 South Gallatin. Nevertheless, Fields claims the search warrant obtained to validate the entry into his home was unlawful and invalid because the copy of the warrant left at his residence was missing the clerk of the court's file stamp. He does not challenge the probable cause determination underlying the issuance of the warrant. Rather, he believes that a valid warrant requires a file stamp prior to its execution. Thus, he asserts that Det. Caudell violated his Fourth Amendment rights by entering his home without a properly file-stamped warrant.

Unfortunately for Fields, the Fourth Amendment is not read so finely.  A search warrant is valid upon a finding of probable cause by a judicial officer. *See* U.S. Const. Amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). Here, the court held an oral probable cause hearing outside of the court's regular business hours and a judicial officer found probable cause to issue the search warrant. It is at that point that the officers had legal authority to conduct a search. Nothing in the Fourth Amendment, or in the case law interpreting

5

it, requires officers to wait until the court opened the next day to have the warrant file-stamped prior to executing it.

Moreover, even if such a requirement was somehow engrafted into the Fourth Amendment, the law is well-settled that ministerial or technical defects with warrants do not invalidate either the warrant or the search conducted pursuant to that warrant. *United States v. Diecidue*, 603 F.2d 535, 562 (5th Cir. 1979) ("This Court has held that defects in the return of a warrant are ministerial in nature and do not invalidate a search."); *see also United States v. Hamilton*, 2017 WL 9476881 at * 3 (N.D. Ga. Jan. 3, 2017) ("The failure to comply with the return and inventory requirement ... is a ministerial defect that does not affect the validity of the search.") (quotes and cite omitted); *Evans v. United States,* 242 F.2d 534, 536 (6th Cir. 1957) (noting importance of procedures required for execution and return of a search warrant but finding they are ministerial in nature). Thus, Courts have noted that absent a showing of prejudice, irregularities in warrant procedures do not void an otherwise valid search warrant. *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971).

Other than his complaint that the copy of the warrant left at his residence failed to have a clerk's file-stamp, Fields has articulated no prejudice to him by this failure nor has he argued or alleged that the warrant was not issued upon a proper showing of probable cause. Thus, to the extent Fields' Fourth Amendment claim is based upon the fact that the officers executed the warrant prior to filing the warrant with the clerk of the court, the Defendants motion for summary judgment is GRANTED.[1]

---

[1]Moreover, even if the validity of the warrant was in question, police officers executing search warrants are entitled to qualified immunity if a reasonable officer would have believed that the execution of the warrant did not violate any clearly established law. *Anderson v. Creighton,* 483 U.S. 635, 638 (1987); *see also Saucier v. Katz.,* 533 U.S. 194, 194–95, 202 (2001) (reiterating standard). In this case, Det. Caudell, with the aid of other officers, searched Fields' residence for home surveillance recording equipment as authorized by the valid search warrant. Det. Caudell had no reason to believe that the warrant was invalid

Fields' complaint also appears to assert an additional ground for relief under the Fourth Amendment pertaining to the manner in which the officers executed the warrant. Fields asserts that the damage to his property, namely the front door, during the execution of the search warrant was excessive. A claim for property damage occasioned during the execution of a valid search warrant is evaluated pursuant to the general touchstone of reasonableness which governs Fourth Amendment analysis. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir.2003) (citing *United States v. Ramirez,* 523 U.S. 65 (1998)). Even though the entry may be lawful, "excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *Ramirez,* 523 U.S. at 71.

In both his Complaint and in his deposition, Fields objects to the damage to his front door occasioned by the officers' entry into his residence to execute the search warrant. However, Fields testified that while there was evidence that the door had been kicked in, the door itself remained functional, albeit bent, and he continued to use it. (Fields Dep. at 70–72, ECF No. 32-3).[2] Thus, the damage to Fields' property, while necessary for officers to execute the search warrant, does not appear to be excessive or unreasonable for the officers to gain entry. In fact, the door continued to be used as of the date of Fields' deposition in February 2020. (Fields Dep. at 70: "Q. The door is hanging up there now right? A. Yeah, it's bent."). There is simply no evidence here suggesting that Det. Caudell or any other officer caused damage that was unreasonable during the search warrant's execution. Thus, Fields has no viable constitutional claim based on damage to his property incidental to law enforcement's search of his residence pursuant to a warrant.

---

as he was the officer that sought the warrant; thus, even if the Court determined that a technical issue invalidated the warrant, Det. Caudell would be entitled to qualified immunity.

[2]In his deposition, Fields indicates that he does not know who damaged his fence, but he assumed that the police did. (Fields Dep. at 53: "I don't know if they did it or not."). He has presented no evidence that the officers did, in fact, damage his fence.

**2.  Fifth and Fourteenth Amendments**

Next, Fields claims that the entrance onto his property and search of his residence violated his Fifth and Fourteenth Amendment due process rights. The Court need not expend much effort to dispense with these claims as neither Amendment is applicable here.

The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state or municipal officials. *Wrinkles v. Davis*, 311 F. Supp. 2d 735, 738–39 (N.D. Ind. 2004). Since no federal actors were involved in the search of Fields' residence, he has no Fifth Amendment claim and summary judgment is appropriate.

As for his Fourteenth Amendment rights, the Supreme Court has stated: "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citations omitted); *Serino v. Hensley*, 735 F.3d 588, 593–94 (7th Cir. 2013) (constitutional claims relating to pretrial deprivations of liberty must be analyzed under the appropriate constitutional amendment, not due process generally). Here, the Fourth Amendment provides an explicit source of protection for the search of Fields' residence.  Thus, no Fourteenth Amendment "substantive due process" right is implicated by the search.

In sum, Defendants' Motion for Summary Judgment on Fields' Fifth and Fourteenth Amendment claims are GRANTED.

**B.  Section 1983 Claims against the Chief of Police**

Fields also sued the Marion Chief of Police but does not indicate in his Complaint whether he is suing her individually or in her official capacity. As a general rule, a complaint under § 1983 that fails to specify whether an individual defendant is being sued in an official or individual

capacity is presumed to allege only an official capacity claim. See *Stevens v. Umsted,* 131 F.3d 697, 706 (7th Cir.1997); *Kolar v. Sangamon County,* 756 F.2d 564, 568 (7th Cir.1984). While Fields' Complaint is silent on this point, his deposition is not. Fields responded to questions concerning his claim against the Chief and indicated that the only reason he sued the Chief is because she is Det. Caudell's supervisor. (Fields Dep. at 98). Thus, the Court concludes that Fields is attempting to hold the City accountable for the acts of Det. Caudell and thus, is asserting an official capacity claim only.[3]  This theory too, however, fails.

Recovery against a governmental unit or entity cannot be based on *respondeat superior* for purposes of § 1983 and Fields must establish the City's liability via *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). To do so, Fields must provide evidence that there was a custom or practice within the City of violating citizens' Fourth Amendment rights. Further, "a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citations and quotations omitted); *see also Monell*, 436 U.S. at  694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") Fields has provided no evidence that there was a policy or custom within the City to enter property pursuant to invalid warrants or damage property during execution of a search warrant. And, for this reason, the City cannot be held liable.

Additionally, there can be no liability against the City without an underlying constitutional violation. Thus, given this Court's conclusion that Det. Caudell's conduct did not violate the

---

[3] Even if Fields was asserting an individual capacity claim against the Chief, the claim would fail as he has alleged no personal involvement by the Chief in the alleged constitutional violations.

Fourth Amendment, the substantive claim against the City fails. *See Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir.2003). Accordingly, the Defendants' Motion for Summary Judgment is GRANTED as to the claims against the Chief of Police.

### C.  Supplemental State Claims

For the reasons stated above, the Court grants Defendants' summary judgment motion as to the claims under 42 U.S.C. § 1983. Because that disposition results in the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over any state law claims asserted by Fields.

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co*., 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendent state claims"); *Wright v. Associated Ins. Cos*., 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

A review of Fields' Complaint does little to aid the court in determining what his underlying state law claims may be, if he asserts any at all.  Defendants take the position that any state law claims are jurisdictionally barred under Indiana's Tort Claims Act, Ind. Code § 34-13-3-8, but even they do not enlighten the Court on the state law claims they believe Fields is asserting. For this reason, the Court declines supplemental jurisdiction over any state law claims Fields may be asserting as none of the factors identified by the Seventh Circuit for the Court to retain jurisdiction are present here.

Accordingly, the Court denies Defendants' motion for summary judgment on the state law claims without prejudice and dismisses the state law claims with leave to refile in state court.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 30) is GRANTED in part and DENIED in part. Judgment is hereby entered in favor of all Defendants on the claims arising under 42 U.S.C. § 1983 in Plaintiff's Complaint. Defendants' Motion is denied as to Plaintiff's state law claims; those claims are dismissed without prejudice to refiling in state court.

So ORDERED on August 3, 2020

s/ Holly A. Brady                                    
JUDGE HOLLY A. BRADY

11